# In the United States Court of Federal Claims

No. 21-1014C

(E-Filed: March 17, 2022)[1]

|  |  |  |
|---|---|---|
| ACESFED, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | Post-Award Bid Protest; Motion for |
| | ) | Judgment on the Administrative Record; |
| and | ) | RCFC 52.1; Standing; Prejudice. |
| | ) | |
| APTIVE RESOURCES, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DECISIVE POINT CONSULTING | ) | |
| GROUP, LLC, | ) | |
| | ) | |
| Intervenor-defendants. | ) | |
| | ) | |

Alexander B. Ginsberg, McLean, VA, for plaintiff.  Meghan D. Doherty, Kevin Massoudi, and Robert Starling, of counsel.

Sonia M. Orfield, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Frank V. DiNicola, Desiree A.

---

[1]     This opinion is filed under seal on March 1, 2022.  See ECF No. 79.  The parties were invited to identify source selection, propriety, or confidential material subject to deletion on the basis that the material is protective/privileged.  No redactions were proposed by the parties.  See ECF No. 81 (notice).  Thus, the sealed and the public versions of this opinion are identical, except for the publication date and this footnote.

DiCorcia, Tara T. Nash, and Christopher Murphy, United States Department of Veterans Affairs, Eatontown, NJ, of counsel.

John R. Prairie, Washington, DC, for intervenor-defendant Aptive Resources, LLC. Cara L. Lasley and Jennifer Eve Retener, of counsel.

Jonathan D. Shaffer, Tysons Corner, VA, for intervenor-defendant Decisive Point Consulting Group, LLC.

OPINION

CAMPBELL-SMITH, Judge.

Plaintiff filed this bid protest challenging the Department of Veterans Affairs' (VA) decision to exclude plaintiff from the competitive range in a procurement for information technology (IT) services. See ECF No. 24 (amended complaint). Plaintiff filed a motion for judgment on the administrative record (AR) in this case, ECF No. 55; and defendant and intervenor-defendants each filed cross-motions for judgment on the AR, ECF No. 57; ECF No. 59; ECF No. 61. After the initial briefing was complete, the court ordered the parties to submit supplemental briefs on the issue of standing, see ECF No. 73, and the parties did so, see ECF No. 74; ECF No. 75; ECF No. 76; ECF No. 77.

In ruling on the motions, the court has considered: (1) the AR, ECF No. 21;[2] (2) plaintiff's amended complaint, ECF No. 24; (3) plaintiff's motion for judgment on the AR, ECF No. 55; (4) intervenor-defendant Decisive Point Consulting Group, LLC's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 57; (5) intervenor-defendant Aptive Resources, LLC's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 59; (6) defendant's cross-motion for judgment on the AR and response to plaintiff's motion, ECF No. 61; (7) plaintiff's reply in support of its motion and response to the cross-motions, ECF No. 63; (8) intervenor-defendant Aptive's reply in support of its cross-motion, ECF No. 65; (9) intervenor-defendant Decisive Point's reply in support of its cross-motion, ECF No. 67; (10) defendant's reply in support of its cross-motion, ECF No. 69; (11) plaintiff's sur-reply in support of its motion, ECF No. 71; (12) intervenor-defendant Aptive's supplemental brief, ECF No. 74; (13) intervenor-defendant Decisive Point's supplemental brief, ECF No. 75; (14)

---

[2]    When defendant initially filed the administrative record (AR) on March 15, 2021, see ECF No. 18, it "inadvertently omitted information," and therefore moved to complete the AR on March 17, 2021, ECF No. 19 at 1 (defendant's motion to complete the AR). The court granted the motion and directed defendant to file the completed AR. See ECF No. 20 (order). Defendant filed the completed AR on March 19, 2021, superseding its original AR. See ECF No. 21.

defendant's supplemental brief, ECF No. 76; and (15) plaintiff's supplemental brief, ECF No. 77.

The motion is now fully briefed, and ripe for decision.  The parties did not request oral argument, and the court deems such argument unnecessary.  The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion.  For the following reasons, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's and intervenor-defendants' cross-motions for judgment on the AR are **GRANTED**.

I.    Background[3]

A.    The Solicitation

On November 12, 2019, the VA issued solicitation number 36C10B19R0046, for IT services as part of the Transformation Twenty-One Total Technology Next Generation (T4NG) contract on-ramp program (the solicitation).[4]  See ECF No. 21-2 at 300-436 (solicitation).  The procurement provides for a five-year contract base period and one five-year option period, with a maximum value of $22.3 billion.  See id. at 315.  The solicitation explained the scope of the procurement as follows:

> The Contractor shall provide total IT services solutions including the following functional areas:  program management, strategy, enterprise architecture and planning; systems/software engineering; software technology demonstration and transition; test and evaluation; independent verification and validation; enterprise network; enterprise management framework; operations and maintenance; cybersecurity; training; IT facilities; and other solutions encompassing the entire range of IT and Health IT requirements, to include software and hardware incidental to the solution.  Accordingly, Task Orders may include acquisitions of software and IT products . . . .  These services, as well as related IT products, may encompass the entire life-cycle of a system.  Moreover, services and related products covered under this contract shall be global in reach and the Contractors must be prepared to provide services and deliverables worldwide.

---

[3]    This case involves considerable detail.  For purposes of deciding these motions the court will relate only those details that are necessary to the instant analysis.

[4]    The copy of the solicitation included in the AR is not dated, but the index filed by defendant, see ECF No. 21-1 at 3, and presentation slides from the Source Selection Advisory Council's May 27, 2020 initial evaluation briefing, see ECF No. 21-5 at 64, indicate that the solicitation was issued on November 12, 2019.

Id. at 311.

The solicitation was intended to "replenish the pool of [service-disabled veteran-owned small businesses (SDVOSBs)]," "anticipating that a large number of the current SDVOSB contract-holders would no longer qualify as a SDVOSB at the end of the initial five-year [contract] period."  ECF No. 61 at 14 (citing ECF No. 21-2 at 262).  The solicitation also explained that "[t]his competition is being conducted pursuant to the on-ramp clause of the T4NG basic contract.  The Government intends to award seven (7) contracts to verified [SDVOSBs]."  ECF No. 21-2 at 431.  The VA, however, reserved the right to adjust that number in its discretion.  See id.  Awards were to be made on a best-value basis, considering five evaluation factors, including "Technical, Past Performance, Veterans Employment, Small Business Participation Commitment Factor (SBPC), and Price."  Id.  Those factors were valued as follows:

> The Technical Factor is significantly more important than the Past Performance Factor, which is slightly more important than the Veterans Employment Factor which is slightly more important than the SBPC Factor, which is slightly more important that the Price Factor.  The Technical Factor has two (2) Sub-factors:  Sample Task Sub-Factor and Management Sub-factor.  Within the Sample Task Sub-factor, Sample Task 1 and Sample Task 2 are equally important.  The Sample Task Sub-factor is significantly more important than the Management Sub-factor.  All non-price factors, when combined, are significantly more important than the Price Factor.  To receive consideration for award, a rating of no less than "Acceptable" must be achieved for the Technical Factor, all Technical Sub-factors, and the SBPC Factor.  Offerors are cautioned that the awards may not necessarily be made to the lowest Price offered or the most highly rated technical proposals.

Id.

To promote an efficient evaluation process, the solicitation contemplated that "the evaluation [would] be conducted in phases, Step One and Step Two."  Id.  For Step One, the offerors were directed to submit a technical proposal and price proposal responding to Sample Task 1.  See id. at 422-23.  Following an evaluation of the Sample Task 1 response, the VA was to establish a competitive range, and select the offerors eligible to proceed to Step Two.  See id. at 431.  Offerors that did not advance to Step Two would be excluded from the competition, and those that proceeded were to submit a response to "Sample Task 2, the Management Sub-Factor, Past Performance Factor, Veterans Employment Factor, SBPC Factor, and Solicitation, Offer & Award Documents, Certifications & Representations and Terms and Conditions."  See id. at 432.  Following evaluation of Step Two proposals, the VA "may establish a competitive range and conduct discussions with all Offerors within the competitive range, or proceed directly to award without discussions."  Id.

The sample tasks were intended to test the "Offeror's expertise and innovative capabilities to respond to the types of situations that may be encountered in performance of a contract resulting from this solicitation." Id. at 433. For this reason, "the Offerors [were not] given an opportunity to correct or revise a Sample Task response." Id. Responses to the sample tasks were evaluated in accord with the following:

> (1)    Understanding of Problems—The proposal will be evaluated to determine the extent to which the Offeror demonstrates a clear understanding of all features involved in solving the problems and meeting the requirements presented by the Sample Task; and the extent to which uncertainties are identified and resolutions proposed.

> (2)    Feasibility of Approach—The proposal will be evaluated to determine whether the Offeror's methods and approach to meeting the Sample Task requirements provides the Government with a high level of confidence of successful completion.

Id. And, considering the foregoing criteria, each sample task response was assigned one of the following overall adjectival ratings:

> a.    Outstanding—A proposal that meets or exceeds all of the Government's requirements, contains extensive detail, demonstrates a thorough understanding of the problems, and is highly feasible (low risk).

> b.    Good—A proposal that meets or exceeds all of the Government's requirements, contains at least adequate detail, demonstrates at least an understanding of the problems, and is at least feasible (low to moderate degree of risk).

> c.    Acceptable—A proposal that at least meets all of the Government's requirements, contains at least minimal detail, demonstrates at least a minimal understanding of the problems, and is at least minimally feasible (moderate to high degree of risk).

> . . . .

> e.    Unacceptable—A proposal that contains a major error(s), omission(s), or deficiency(ies) that indicates a lack of understanding of the problems or an approach that cannot be expected to meet requirements or involves a very high risk; and none of these conditions can be corrected without a major rewrite or revision of the proposal. A proposal that fails to meet any of the Government's requirements after the final evaluation shall be ineligible for award regardless of whether it can be corrected without a major rewrite or revision of the proposal.

ECF No. 21-4 at 418 (subsection d is omitted because it is inapplicable to evaluations of the sample tasks).

      B.    Sample Task 1

In Sample Task 1, the VA sought responses to the following hypothetical scenario:

> The U.S. Department of Veterans Affairs (VA) signed a multi-year contract to modernize its electronic health record (EHR) system and to replace its legacy Veterans Information Systems and Technology Architecture (VISTA) system. VA's infrastructure/Information Technology (IT) components will need to be analyzed, reported, prioritized, remediated, and tracked to prepare VA for the new EHR system. Using the T4NG Performance Work Statement, describe in detail your approach to analyze, remediate, and report VA infrastructure/IT deficiencies across the organization to prepare VA facilities for the new EHR system.

ECF No. 21-2 at 502. The language of Sample Task 1 incorporated by reference the requirements included in the performance work statement (PWS), which is part of the solicitation. See id. at 307-70. The VA gave offerors seven business days to submit their responses, which were limited to a maximum of twenty-five pages. See id. at 269.

To assist in evaluating the Sample Task 1 responses, the VA "developed a model solution for Sample Task 1 to identify the areas that the agency deemed necessary for its successful completion." ECF No. 61 at 17 (citing ECF No. 21-12 at 1093). In developing this evaluation tool, the VA "identified all of the high level focus areas . . . that an offeror would need to address to successfully execute the effort, as well as the lower-level focus areas . . . that were intrinsic to each high level focus area." Id.

The Sample Task 1 responses were assigned strengths, weaknesses, or deficiencies in each of the five high level focus areas, according to the following criteria:

> Strength. Any aspect of a proposal that, when judged against a stated evaluation criterion, enhances the merit of the proposal or increases the probability of successful performance of the contract. A significant strength appreciably enhances the merit of a proposal or appreciably increases the probability of successful contract performance.

> Weakness. A flaw in a proposal that increases the risk of unsuccessful contract performance. A significant weakness in a proposal is a flaw that appreciably increases the risk of unsuccessful contract performance.

> Deficiency. A material failure of a proposal to meet a Government requirement, or a combination of significant weaknesses in a proposal that

> increases the risk of unsuccessful contract performance to an unacceptable
> level.

ECF No. 21-4 at 419.  Strengths and weaknesses were to be assigned only for the high
level focus areas.  See ECF No. 21-12 at 1093.

The VA subsequently issued an amendment to the solicitation to "1) Revise
portions of the Proposal Format requirements as provided within Section L.10 of the
Solicitation; and, 2) Allow for resubmittal of only the Sample Task 1 as necessary to
ensure the instructions are met as described below."  ECF No. 21-2 at 510-11.  The VA
stressed that:

> The Technical Evaluation Approach, as stated within Section M.C.1.a of the
> Solicitation, remains unchanged; Offerors are only being provided this
> limited opportunity to resubmit Sample Task 1 to ensure compliance with
> Section L.10.2.a, Format, as amended herein. Future opportunities to correct
> or revise a Sample Task response will not be provided.

Id. at 511.  It further noted that, "Offerors are reminded and cautioned that all Solicitation
requirements, as amended herein, to include proposal formatting, must be strictly adhered
to."  Id.  In response to the amendment, all offerors resubmitted their proposals.  See ECF
No. 21-4 at 56-352 (offerors' revised Sample Task 1 proposals).

C.    Organizational Conflict of Interest Determination

Because Sample Task 1 involved the EHRM system and, in 2018, the VA signed a
multi-year contract with Cerner Corporation to replace that system, the contracting
officer reviewed the task to "determine if Cerner Corporation or any of its subcontractors
performing under the [electronic health record modernization (EHRM)] contract would
have an Organizational Conflict of Interest (OCI) with the T4NG On-Ramp solicitation
as a result of information that may cause an unfair competitive advantage."  ECF No. 21-
20 at 2.  The contracting officer considered Federal Acquisition Regulation (FAR)
9.505(b), which defines OCIs, and consulted the Source Selection Evaluation Board
(SSEB) Chairperson "who led the effort in developing Sample Task 1 and its
corresponding solution."  Id. at 1-2.  The contracting officer "confirmed that in order to
provide a response to the Sample Task 1 question, Offerors do not need any non-public
knowledge of [EHRM] end state requirements, nor would access to any non-public
information pertaining to EHR provide an Offeror with a competitive advantage."  Id.
Instead, Sample Task 1 required a detailed overview of the offeror's approach to
"analyze, remediate, and report VA infrastructure/IT deficiencies," which "would be
essentially the same for any other major IT system similar in size and scope; therefore,
[it] is not specific to the EHR system."  Id. at 2.

The contracting officer concluded that, because "the solution to Sample Task 1 does not require the Offerors to have any non-public knowledge of Cerner or []EHRM end state requirements, any proprietary information Cerner or any of its subcontractors have as a result of the EHRM contract, would not present an unfair competitive advantage." Id. (footnote omitted). This conclusion "extends to other contractors that may have indirectly supported EHRM efforts through contracts and orders beyond the Cerner EHRM contract." Id. at n.1. Thus, the contracting officer determined that no OCI existed "that would preclude Cerner or any of its subcontractors from participating in the solution." Id.

D.      First Competitive Range Determination

Of the ninety-four proposals evaluated by the VA, "61 proposals were rated 'Unacceptable;' 21 proposals were rated 'Acceptable;' eight (8) proposals were rated 'Good;' and four (4) proposals were rated 'Outstanding.' The evaluated prices of the 94 offerors ranged from a low of $6.13 Billion to a high of $16.33 Billion." ECF No. 21-5 at 239 (June 4, 2020 Source Selection Authority (SSA) memorandum for record making competitive range determination); see also id. at 196 (May 27, 2020 SSA Step One Evaluation Summary). In determining the competitive range, the SSA excluded all offerors with "unacceptable" Sample Task 1 ratings. See id. at 239. The SSA determined that excluding the sixty-one unacceptable proposals was appropriate because "Sample Task 1 was significantly more important than Price." Id. at 240. The SSA also noted that "there was ample competition among Offerors with 'Acceptable' or better technical proposals with low evaluated prices." Id. The contracting officer concurred with the SSA's conclusion and thirty-three offerors were included in the competitive range for evaluation in Step Two. See id.

E.      Step Two Evaluation and Competitive Range Determination

The VA released Sample Task 2 to the offerors in the competitive range on June 30, 2020; proposals were due on July 10, 2020. See ECF No. 21-5 at 255 (email releasing Sample Task 2); ECF No. 21-12 at 1084 (October 20, 2020 SSA Interim Evaluation Briefing). Offerors were required to provide, in addition to their response to Sample Task 2, the management proposal—including all contractor teaming agreements (CTAs)—and past performance, Veterans employment, and small business participation proposal volumes. See ECF No. 21-2 at 425-26. The SSEB then evaluated the proposals and presented the results of its evaluation to the Source Selection Advisory Council (SSAC) and the SSA in a "detailed slide presentation and thorough discussion of the evaluation assessments pertaining to each Step Two proposal." ECF No. 21-12 at 1286. In summary, the proposals were rated as follows:

24 proposals were rated "Acceptable," eight (8) proposals were rated "Good," and one (1) proposal was rated "Outstanding" in the Technical

Factor. All 33 proposals were rated "Low Risk" in the Past Performance Factor. In the Veterans Employment Factor, the 33 proposals ranged from eight (8) to 18,182 employees and one (1) to 4,574 Veteran employees, and the percentage of Veterans employed ranged from 4.41 percent to 71.08 percent. For the SBPC Factor, four (4) proposals were rated "Susceptible to Being Made Acceptable," two (2) proposals were rated "Acceptable," ten (10) were rated "Good," and 17 were rated "Outstanding." The evaluated prices ranged from a low of $6.62 billion to a high of $10.48 billion.

ECF No. 21-12 at 1286-87 (October 23, 2020 SSA Memorandum for Record re: Step Two Competitive Range Determination); see also id. at 1282-83 (SSEB Step Two Evaluation Summary).

The SSA considered "all factors and sub-factors and their relative importance," and determined that offerors rating "Acceptable" in the technical factor should be excluded from the competitive range because "they were not among the most highly rated proposals with a realistic prospect for award." Id. at 1288. The SSA determined that "reviewing the detailed findings" of the offerors' evaluations revealed that those rated "Acceptable" "presented a higher degree of risk in the Sample Task responses than those Offerors rated 'Good' or better in the Technical Factor." Id. The SSA also considered the offerors' past performance—the second most important factor as defined by the solicitation—and determined that, although they were each "assessed a varying number of weaknesses, each was considered Low Risk and therefore essentially equal in that Factor." Id.

The SSA also "considered the fact" that some of the offerors rated "Acceptable" in the technical factor "were stronger in the remaining factors . . . and/or proposed lower evaluated prices" than higher rated offerors. Id. The SSA determined that, given the relative importance of the technical factor and past performance factor, "none of these differences were significant enough to outweigh the 'Good' or better ratings received for the Technical Factor." Id. The contracting officer concurred with the SSA's determination that the nine offerors that received "Good" or better ratings in the technical factor would compose the competitive range for discussions. Id. at 1289.

After discussions and final proposal revisions, the SSEB presented the SSA with the final results of evaluation on November 18, 2020. See ECF No. 21-19 at 729 (Memorandum re: Fair and Reasonable Price Determination). The SSA determined to award contracts to all nine offerors in the competitive range for award, see id. at 729, the contracting officer determined that all nine offerors proposed fair and reasonable prices, see id. at 730, and the VA issued its Source Selection Decision awarding contracts to each of the nine offerors in the competitive range, see id. at 768-72.

F.    Plaintiff's Evaluation

Plaintiff was given an "Acceptable" rating for Sample Task 1 and "Good" for Sample Task 2.  ECF No. 21-12 at 786 (the VA's Technical Factor Initial Evaluation Report for plaintiff's proposal).  Plaintiff's Sample Task 1 rating was based on an assessment of two strengths, one weakness, and one significant weakness.  See id. at 787-90.  The significant weakness was the result of plaintiff's proposal "lack[ing] detail in its approach to demonstrate the enterprise high level planning associated with analyzing, remediating, and reporting on the VA's infrastructure/IT deficiencies," as well as "regarding its understanding of the schedule involved with the VA's [EHRM] program." Id. at 789.  The evaluation explained that this lack of detail "adds high risk that the project's infrastructure/IT analyses and remediations may result in schedule delays."  Id. at 790.  Likewise, the proposal's "minimal detail" demonstrating "an understanding of facilities planning . . . . adds risk that the Offeror does not have insight into the diversity and scope of work required."  Id.  Plaintiff's Sample Task 2 was given one significant strength, four strengths, and two weaknesses.  See id. at 792-96.

"Based on the relative importance of the sample tasks, wherein each sample task was of equal importance, and considering the qualitative evaluation results of the individual sample tasks," plaintiff received an overall "Sample Task Subfactor rating of **ACCEPTABLE**."  Id. at 786 (emphasis in original).  Plaintiff received a management subfactor rating of "**Good**," based on two assessed strengths.  Id. at 798-99 (the VA's Technical Factor Management Subfactor Initial Evaluation Report for Plaintiff).  "Based on the evaluation results of the Technical subfactors and with due consideration given to the weights for those subfactors," plaintiff received an overall rating for the technical factor of "**ACCEPTABLE**."  Id. at 780 (emphasis in original).

Plaintiff was rated "Low Risk" on the past performance factor, id. at 800-02, had a veteran employment percentage of 26.83 percent, see id. at 803, and received a rating of "**GOOD**" for its small business participation factor, id. at 804-05 (emphasis in original). Plaintiff also proposed the lowest price, but the SSA and contracting officer determined that "it was not enough of a difference, considering the slightly higher prices of the 'Good' Offerors, to outweigh its 'Acceptable' rating in the most important factor"—the technical factor.  Id. at 1289.

G.    Procedural History

The VA informed plaintiff that it was not included in the competitive range and had, therefore, been eliminated from the competition on October 23, 2020.  See ECF No. 21-13 at 2-3.  Plaintiff requested a debriefing on its evaluation, which the VA provided on November 3, 2020.  See id. at 10-66.  Plaintiff filed a protest of its exclusion from the competitive range with the Government Accountability Office (GAO) on November 16, 2020.  See ECF No. 21-15 at 1319-57.  The GAO denied the protest on February 22,

2021, see ECF No. 21-17 at 180-94.  Plaintiff filed its complaint in this court on March 2, 2021, see ECF No. 1, and amended its complaint on March 23, 2021, see ECF No. 24.

II.    Legal Standards

In its amended complaint, plaintiff invokes this court's bid protest jurisdiction. See ECF No. 24 at 14.  This court's bid protest jurisdiction is based on the Tucker Act, which gives the court authority:

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1).  The Tucker Act also states that the court may grant "any relief the court considers proper . . . including injunctive relief."  28 U.S.C. § 1491(b)(2).

To establish jurisdiction, a plaintiff must therefore demonstrate that it is an "interested party."  28 U.S.C. § 1491(b)(1).  The Federal Circuit has held that the "interested party" requirement "imposes more stringent standing requirements than Article III."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Though the term "interested party" is not defined by the statute, courts have construed it to require that a protestor "establish that it '(1) is an actual or prospective bidder and (2) possess[es] the requisite direct economic interest."  See id. (quoting Rex Serv. Corp. v. United States, 448 F.3d 1305, 1308 (Fed. Cir. 2006)) (alteration in original).

Once jurisdiction is established, the court's analysis of a "bid protest proceeds in two steps."  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  First, the court determines, pursuant to the Administrative Procedure Act standard of review, 5 U.S.C. § 706, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law."  Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4) (adopting the standard of 5 U.S.C. § 706)).  If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.

To establish prejudice, "a protester must show 'that there was a substantial chance it would have received the contract award but for that error.'"  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  "In other words, the protestor's chance of securing the award must not have been insubstantial."  Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003) (citations

11

omitted).  The substantial chance requirement does not mean that plaintiff must prove it was next in line for the award but for the government's errors.  See Sci. & Mgmt. Res., Inc. v. United States, 117 Fed. Cl. 54, 62 (2014); see also Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) ("To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract.").  But plaintiff must, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'"  Precision Asset Mgmt. Corp. v. United States, 125 Fed. Cl. 228, 233 (2016) (quoting Info. Tech., 316 F.3d at 1319).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As the Supreme Court of the United States has explained, the scope of review under the "arbitrary and capricious" standard is narrow.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974).  "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," and "[t]he court is not empowered to substitute its judgment for that of the agency.'"  Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, 575 F.3d at 1368-69 (stating that under a highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.   Analysis

According to plaintiff, the VA's "evaluation and competitive range determination suffer from both systemic and specific flaws, but for which [plaintiff] . . . would have been in the competitive range with a substantial chance of award."  ECF No. 55 at 7. Specifically, plaintiff argues that the VA's evaluation was flawed because:  (1) it did not evaluate the proposals against all evaluation criteria when it excluded all "acceptable" rated offerors regardless of their price, past performance, and veteran's employment ratings, see id. at 8-10, 43-48; (2) it treated offerors that had the same rating as plaintiff differently and assigned plaintiff lower ratings than other offerors with similar proposal features, see id. at 10-12, 48-53; (3) it failed to exclude an offeror that did not abide by the solicitation requirements, see id. at 12-14, 53-58; (4) it used competitive range procedures when it had no reasonable basis to conduct discussions, see id. at 14-16, 58-61; and (5) it conducted a procurement "tainted by an unmitigated OCI," id. at 16, 61-65.

Defendant responds that, "[a]s an initial matter, [plaintiff] cannot establish standing to bring this protest."  ECF No. 61 at 26.  Plaintiff, defendant contends, cannot establish that it had a substantial chance of inclusion in the competitive range because of "the flexibility of the competitive range," and the fact that inclusion in the competitive range did not guarantee contract award.  Id. at 34; see also id. at 34-35.  Further, defendant argues, even if plaintiff had standing:  (1) "the VA applied the evaluation

criteria consistent with the solicitation," id. at 26; see also id. at 36-47; (2) "the record establishes that there were differences in the proposals . . . that led to the agency's different evaluative conclusions," id. at 27; see also id. at 47-61; (3) the offerors abided by the solicitation, id. at 27, 61-68; (4) the agency conducted discussions and therefore used the competitive range consistent with the regulations, see id. at 27-28, 68-72; and (5) plaintiff failed to identify any "'hard facts'" in support of its OCI claim, relying instead on "speculation and innuendo," id. at 28; see also id. at 72-77.

Intervenor-defendant Decisive Point, echoes defendant's arguments and adds that plaintiff's "arguments amount to mere disagreement with the subjective judgment of the agency evaluators," ECF No. 57 at 13, which "is not enough for this [c]ourt to overturn" the agency's decision, id. at 14. Similarly, intervenor-defendant Aptive notes that, in addition to defendant's arguments, plaintiff cannot have been prejudiced by Aptive's evaluation because Aptive's "inclusion in the competitive range did not prevent [plaintiff] from also making the competitive range." ECF No. 59-2 at 5. Put another way, "if Aptive were excluded from the competitive range, it would not mean that [plaintiff] would be included."[5] Id.

A.   Plaintiff Has Standing to Protest Its Exclusion from the Competitive Range

The record is clear, for standing purposes, that plaintiff was an actual offeror in the subject procurement. See Weeks Marine, 575 F.3d at 1359; see also ECF No. 24 at 14; ECF No. 21-2 at 614-86. Thus, to establish standing plaintiff must demonstrate that it has a direct economic interest in the procurement. See Weeks Marine, 575 F.3d at 1359. To demonstrate a direct economic interest sufficient to support standing, plaintiff must both show that it had a substantial chance of award and show that it was prejudiced by the agency's action. See Wis. Physicians Serv. Ins. Co. v. United States, 151 Fed. Cl. 22, 30 (2020). In short, plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." Info. Tech., 316 F.3d at 1319 (citing Alfa Laval, 175 F.3d at 1367). To make the appropriate showing, plaintiff must demonstrate "more than a bare possibility of receiving the award." Precision Asset, 125 Fed. Cl. at 233 (citing Bannum, 404 F.3d at 1358) (affirming the trial court's determination that the plaintiff had not demonstrated a substantial chance of award when its "argument rest[ed] on mere numerical possibility, not evidence").

An offeror that was properly eliminated from the competition as "untimely, technically unacceptable, or otherwise failing to merit consideration as a finalist," only has standing to challenge its elimination from the competition and lacks standing to

[5]   Because intervenor-defendants' arguments track closely with defendant's arguments, the court will not separately discuss each intervenor-defendant's arguments unless they are both different from the arguments made by defendant and pertinent to this decision.

challenge any agency action subsequent to its elimination.  Wis. Physicians, 151 Fed. Cl. at 30-31 (citing Labatt Food Serv., Inc. v. United States, 577 F.3d 1375, 1380-81 (Fed. Cir. 2009)).  In Wisconsin Physicians, the court held that an offeror eliminated from competition as technically unacceptable had standing to challenge its own proposal evaluation.[6]  See id. at 32.  After it found that the agency's evaluation and plaintiff's elimination as technically unacceptable were appropriate, the court went on to hold that plaintiff did not have standing to challenge any agency action after its elimination, including a potential OCI.  See id. at 43-44.

Defendant concedes that under the standing test, and applying the reasoning in Wisconsin Physicians, plaintiff has standing to challenge "the agency's evaluation of its proposal," but argues that it does not have standing to bring the rest of its claims.  ECF No. 76 at 9-10.  Plaintiff, however, argues that it "has standing to pursue all allegations that challenge the composition of the competitive range and [plaintiff's] exclusion from it" because it "was not deemed technically unacceptable" or otherwise ineligible for award and was the highest-rated offeror not included in the range and lowest-overall priced offeror.  ECF No. 77 at 7 (emphasis in original).

The court agrees with the parties that plaintiff has standing to challenge its own evaluation and to challenge its alleged disparate treatment during the evaluation process. In the court's view, plaintiff has demonstrated that it had a substantial chance of being included in the competitive range.  Plaintiff need not show actual causation to make such a showing.  See Bannum, 404 F.3d at 1358 ("This test is more lenient than showing actual causation.").  Plaintiff's alleged position as the lowest-priced, highest-rated offeror not included in the competitive range, along with the alleged flaws in the VA's evaluation, are sufficient to establish plaintiff's substantial chance of inclusion in the competitive range.  See Info. Tech., 316 F.3d at 1319.  Thus, as in Wisconsin Physicians, plaintiff has alleged errors in its technical evaluation, error in the consideration of the past performance factor, and error in consideration of its price that, if valid, could have placed plaintiff within the final competitive range.  See Wis. Physicians, 151 Fed. Cl. at 32.

The court, however, cannot make a determination about plaintiff's standing to protest the agency's actions subsequent to plaintiff's elimination until it has determined whether the agency appropriately evaluated plaintiff's proposal.  See id. at 30.

B.    The VA's Evaluation of Plaintiff's Proposal Was Not Arbitrary or Capricious

1.    The VA Appropriately Applied All Evaluation Criteria

---

[6]    While not binding, the court finds the reasoning in Wisconsin Physicians Service Insurance Co. v. United States, 151 Fed. Cl. 22 (2020), persuasive.

Plaintiff argues that the VA, "[r]ather than factoring all evaluation criteria" into its evaluation, ECF No. 55 at 44, "based its competitive range determination on the technical factor adjectival ratings alone," id. at 43, when it "mechanically" excluded all offerors rated acceptable in the technical factor, id. at 44.

Review of the record, however, reveals that the VA's evaluation was detailed and reasoned, and included review and discussion of each of the evaluation factors and how they weighed against each other. See ECF No. 21-12 at 1288-89. The VA's review included:

(1)     Detailed price evaluations for each offeror, see ECF No. 21-4 at 437-84, ECF No. 21-5 at 1-48;

(2)     An initial 147 slide briefing related to the evaluation of Sample Task 1, which included information about the strengths and weaknesses of each offeror and a detailed price evaluation, see ECF No. 21-5 at 49-196;

(3)     An initial competitive range determination memorandum, and a confirmation of that determination after items for negotiation were considered, see id. at 239-42;

(4)     Evaluation reports for each offeror that included a detailed overview of the assessed strengths and weaknesses for the sample tasks and management proposal, the past performance summary and weaknesses, the veterans employment calculation, and the strengths and weaknesses of the small business participation levels, see ECF No. 21-12 at 752-1066;

(5)     A second, more than two-hundred slide, presentation that included details about the strengths and weaknesses of each offeror's Sample Task 2 and management proposals, a detailed review of each offeror's past performance, a calculation of each offeror's veterans employment percentage, and a review of each offeror's small business participation, see id. at 1069-1283; and

(6)     A final competitive range determination memorandum explaining the SSA's and contracting officer's review of the evaluation and rationale for their decision-making, see id. at 1284-89.

    Reviewing each of these evaluations, it appears to the court that the VA specifically considered all of the relevant factors in assigning plaintiff its ratings. See id. at 786-805.

Taking into account the breadth and detail of the VA's evaluation, the court cannot credit plaintiff's assertion that the VA "based its determination on the technical factor

alone" and "mechanically" excluded offerors.  ECF No. 55 at 44.  It is not in the court's
purview to "'substitute its judgment for that of the agency.'"  Bowman, 419 U.S. at 285
(quoting Citizens to Preserve Overton Park, 401 U.S. at 416).  If, as it has here, the VA
has "articulate[d] a 'rational connection between the facts found and the choice made'"
the court will uphold the agency's decision.  Id. (quoting Burlington Truck Lines v.
United States, 371 U.S. 156, 168 (1962)).  The court perceives no failure to consider
relevant factors for evaluation or clear error of judgment by the VA that would support
overturning the agency's conclusions.  See Bowman, 419 U.S. at 285.  Instead, it appears
that plaintiff's challenges to the VA's evaluation of the proposals amount to
disagreements with the VA's conclusions.

2.     The VA Applied the Evaluation Criteria Equitably

According to plaintiff, the VA treated several offerors more favorably than
plaintiff for similar issues in their Sample Task 1 proposals.  See ECF No. 55 at 49-53;
ECF No. 63 at 26-40; ECF No. 71.  Plaintiff summarized its own argument, contending
that it was "unequally downgraded relative to multiple awardees—specifically,
[plaintiff's]:  (1) assignment of labor categories; (2) discussion of 'testing[';] (3)
discussion of VA Medical Centers and other sites; (4) discussion of 'FIPS 140-2' and
'WPA-2[';] and (5) identification of the period of the electronic health record
modernization rollout."  ECF No. 71 at 3.  Defendant responds that, while the details of
the offerors' proposals may look similar, the overall rating was based on "clear
differences in the proposals under the high-level focus area[s]."  ECF No. 61 at 49; see
also id. at 48-61.  And, while an offeror "may have shared a couple of [plaintiff's] flaws,"
the other proposals' overall high-level focus areas were "objectively better."  Id. at 50;
see also id. at 48-61.  Plaintiff replies that the "relevant question" is not about the overall
rating, but whether the other offerors and plaintiff "were equally downgraded for the
same alleged flaws."  ECF No. 63 at 31 (emphasis in original).

To prevail on its claims of disparate treatment, plaintiff must demonstrate that the
VA "unreasonably downgraded its proposal for deficiencies that were 'substantively
indistinguishable' from or nearly identical to those contained in other proposals."  Office
Design Grp. v. United States, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (quoting Enhanced
Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 588 (2017)).  If plaintiff fails to
demonstrate that the proposals at issue are "indistinguishable for purposes of the
evaluation, then the exercise instead crosses the line and involves the second guessing of
'minutiae,'" which is an inappropriate exercise for the court to undertake.  Enhanced
Veterans, 131 Fed. Cl. at 588 (quoting E.W. Bliss Co. v. United States, 77 F.3d 445, 449
(Fed. Cir. 1996)).

A careful review of plaintiff's cited examples of allegedly disparate treatment
demonstrates that plaintiff has not made the requisite showing that its proposal is
"substantively indistinguishable" from the other quoters' proposals.  See Office Design

16

Grp., 951 F.3d at 1372.  Plaintiff's examples represent granular similarities between the proposals that do not account for differences between the overall proposals and overall evaluations.[7]  See, e.g., ECF No. 55 at 49 (discussing plaintiff's example of the treatment of labor categories).  Compare, e.g., ECF No. 21-4 at 96, with id. at 351-52, and id. at 117 (the labor categories included in the proposals at issue).  When taking into account the entirety of the proposals and the entirety of the evaluations, the proposals that plaintiff asserts are "substantively indistinguishable," become readily distinguishable.  Office Design Grp., 951 F.3d at 1372.

The court will not involve itself in the inappropriate "second guessing of 'minutiae'" for which plaintiff presses.  Enhanced Veterans, 131 Fed. Cl. at 588 (quoting E.W. Bliss, 77 F.3d at 449).  The court is satisfied that the VA closely reviewed each proposal and that any differences in evaluation outcome are not the result of disparate treatment of "indistinguishable" proposals.  Id.  Rather, in the court's view, the evaluation flaws and disparate treatment of which plaintiff complains amount to a strong disagreement with the conclusions the VA drew during its evaluation.  The court cannot and will not substitute its judgment for that of the agency when the agency has clearly articulated a rational connection between facts and conclusions about distinguishable proposals.  See Bowman, 419 U.S. at 285; Office Design Grp., 951 F.3d at 1372.  Plaintiff's claims related to the VA's evaluation of its proposal must, therefore, fail.

      C.      Plaintiff Does Not Have Standing to Pursue Its Challenges to the Agency's Actions Subsequent to Its Elimination

Having found that the VA did not act arbitrarily or capriciously in evaluating plaintiff's proposal, and that plaintiff was thereby appropriately eliminated from the competition, the court now turns to the question of plaintiff's standing to pursue its claims regarding the agency's actions subsequent to plaintiff's elimination.

Defendant argues that plaintiff does not have standing to bring its remaining claims because it "cannot establish that there was a substantial chance [plaintiff] would have received the contract award but for the alleged error[s]."  ECF No. 76 at 11.  Defendant further argues that, because the solicitation provided for multiple awards

---

[7]      For example, while, as plaintiff points out, offeror 96 and plaintiff made two similar choices in their list of labor categories—each included a 508 Compliance Expert and excluded an HVAC specialist—that was noted in the VA's explanation of plaintiff's significant weakness but not commented upon in offeror 96's evaluation, the two personnel proposals overall are quite different.  Compare ECF No. 21-4 at 96 with id. at 351-52.  Plaintiff's Sample Task 1 proposal appears to include only a bullet point "partial list of applicable Labor Categories," id. at 96, while offeror 96 includes one and a half pages of personnel explanation, a chart of organization structure, and a table of appliable labor categories that contains substantial differences to plaintiff's labor categories, see id. at 351-52.  The court carefully reviewed each of plaintiff's examples and cites just this one as an exemplar of what it found for each cited example.

rather than a set number of awards, any errors in the evaluation of those offerors included in the competitive range and the eventual awardees cannot have prejudiced plaintiff.  See id. at 11-15.

Plaintiff responds that it would have had a "substantial chance of displacing" its competitors in the competitive range if the VA had either excluded intervenor-defendant Aptive from the competitive range or considered the alleged OCI.  ECF No. 77 at 17; see also id. at 20-21.  Plaintiff argues that because these issues "implicate the composition of the competitive range," they do not constitute agency action subsequent to plaintiff's elimination.  Id. at 20.  Plaintiff also contends that it has standing to challenge the agency's use of competitive range procedures and failure to conduct discussions because it "challenges the propriety of the creation of the competitive range, rather than any specific proposal included therein."  Id. at 19.

In the court's view, each of plaintiff's remaining challenges constitutes a challenge to the agency's actions subsequent to plaintiff's elimination from the competition.  As such, plaintiff could not have been prejudiced by the agency's actions and lacks standing to bring the claims.  The court will explain how this principle applies to each claim in turn.

### 1.    Plaintiff Was Not Prejudiced by Any Alleged Failure to Exclude Intervenor-Defendant Aptive

Plaintiff argues that the VA should have excluded intervenor-defendant Aptive from the competition for two reasons:  (1) Aptive made substantive revisions to its Sample Task 1 proposal in response to Amendment 1 "in contravention of" the solicitation provision prohibiting revisions to a sample task response, ECF No. 55 at 54; and (2) Aptive failed to submit its required CTAs as part of its management proposal, see id. at 57.  According to plaintiff, by permitting Aptive to proceed with a revised Sample Task 1, the VA treated Aptive more favorably than plaintiff, and conducted "unequal discussions" with Aptive.  See id. at 55-56.  Plaintiff contends that if Aptive had been "reasonably evaluated . . . in accordance with the [s]olicitation, there is a substantial chance that [plaintiff]—the highest-rated offeror not included in the competitive range— would have been selected in [Aptive's] stead."  Id. at 57-58; see also ECF No. 63 at 41 ("Had [plaintiff] also been given an additional 19 days to make substantive revisions to its Sample Task 1 proposal, there is a reasonable likelihood that it would have improved its proposal, as [Aptive] did.").  Plaintiff further argues that if the court finds plaintiff lacks standing to pursue this claim, "this [c]ourt regularly would be deprived of jurisdiction to remedy significant procurement errors in multiple-award procurements." ECF No. 77 at 18.

Defendant responds that plaintiff's "assumption that there is a substantial chance that it would [have] receive[d] an award if [Aptive] had received a lower assessment on

the Management Sub-Factor is flawed" because "there is no reason to believe that if an offeror were eliminated, [plaintiff] would have been selected for award." ECF No. 61 at 68; see also ECF No. 76 at 11. This is so, defendant contends, because in this multi-award procurement, "there was no guarantee under the solicitation that an additional award would be made if one of the awardees had been eliminated." ECF No. 61 at 68. Defendant further argues that "Amendment 1 encouraged offerors, without explicit limitation, to revise their Sample Task 1 proposal in order to ensure compliance with formatting requirements." Id. at 62. Thus, according to defendant, "the limited organizational adjustment [Aptive] made to its proposal . . . [is] not forbidden by the amendment," id. at 63 (citation omitted), and all offerors received the same chance to revise their proposals as Aptive did, see id. at 65. Moreover, defendant contends, the VA's evaluation of Aptive's management proposal was reasonable, despite the missing CTAs, because the solicitation did not require the VA to exclude Aptive or assess a deficiency for the error and the contracting officer issued an item for negotiation (IFN) to Aptive to obtain the missing CTAs. See id. at 66-67.

To succeed on its argument that the VA should have excluded Aptive, plaintiff must demonstrate that it was prejudiced—meaning, at minimum, show that "had the alleged errors been cured, . . . 'its chances of securing the contract [would have] increased.'" Precision Asset, 125 Fed. Cl. at 233 (quoting Info. Tech., 316 F.3d at 1319). The court agrees with defendant that plaintiff has not done so. In the court's view, the VA's evaluation of Aptive's proposal, whether inappropriately revised or missing required components, did not affect the VA's evaluation of plaintiff's proposal. Plaintiff has neither explained how—nor pointed to any record evidence that—a change in the VA's evaluation of Aptive's proposal would have changed how the VA viewed plaintiff's proposal. Simply stating that it was the "highest-rated offeror not included in the competitive range" is insufficient under the multi-award circumstances here. ECF No. 55 at 57-58; see also Wis. Physicians, 151 Fed. Cl. at 43 (noting that it would be "illogical" for an agency to "reverse course and reinstate an offeror that had been eliminated from the competition as technically unacceptable" merely because another offeror's proposal was deficient). As defendant noted, there was no guaranteed number of awards, and the exclusion of one offeror from the competitive range did not necessarily ensure the inclusion of another. See ECF No. 61 at 68. Therefore, regardless of the VA's evaluation of Aptive's proposal, plaintiff cannot establish prejudice sufficient to confer standing, and its claim on this point must fail. See Alfa Laval, 175 F.3d at 1367 (noting that to establish prejudice, "a protester must show 'that there was a substantial chance it would have received the contract award but for that error'") (quoting Statistica, 102 F.3d at 1582).

2.    Plaintiff Was Not Prejudiced by the VA's Alleged Improper Use of Competitive Range Procedures

Plaintiff argues that the VA had no reasonable basis to conduct discussions nor "any intention of receiving or evaluating material proposal revisions," making its use of a competitive range inappropriate.  ECF No. 55 at 58.  The VA, plaintiff contends, conducted discussions "in name only," when it issued IFNs that related to past performance—an issue on which "the VA already had concluded that all of the offerors were entitled to the lowest-possible risk rating," id. at 59—and the failure of two offerors to submit all of their CTAs, despite the VA having already assigned those offerors "the highest rating it assigned to any competitive range offeror under Management Sub-Factor," id. at 60.  According to plaintiff, this demonstrated that the VA "plainly had no intention of receiving substantive proposal revisions," id., reached the same conclusions it had already reached in establishing the competitive range, and made its awards "despite never having conducted any trade-offs among proposals," id. at 61 (emphasis in original).  Therefore, plaintiff argues, the VA "had no rational basis to invoke competitive range procedures."  Id.  Plaintiff contends that this claim "challenges the propriety of the creation of the competitive range, rather than any specific proposal included therein."  ECF No. 77 at 19.  Therefore, plaintiff argues, the error did not occur subsequent to plaintiff's elimination, but "precisely" when plaintiff was eliminated—thus, conferring standing.  Id.

Defendant responds that the agency properly utilized competitive range procedures and plaintiff lacks standing to advance this claim.  See ECF No. 61 at 68-72; ECF No. 76 at 14-15.  Defendant notes that "[i]t is squarely within the agency's broad discretion, not the protestor's, to determine whether discussions are necessary, and if so, to what extent they are permitted."  ECF No. 61 at 68 (citing FAR 15.306(d)(3)).  The VA, defendant contends, appropriately issued specific items for discussion in the IFNs, see id. at 69, acknowledged that proposal revisions may be necessary, see id., and ultimately permitted offerors "to make any revision permitted by the solicitation that they desired," id. at 71.  Thus, according to defendant, the VA's use of the competitive range was "proper and should be upheld."  Id. at 72.  Defendant further contends that plaintiff could not have been prejudiced by the agency's use of the competitive range after it was properly excluded from the range because changing the use of the competitive range "would not improve [plaintiff's] chances of receiving an award."  ECF No. 76 at 15.

In the court's view, the VA's use of the competitive range—even if an inappropriate use due to the lack of discussions—did not affect the VA's evaluation of plaintiff's proposal.  Plaintiff has neither pointed to any record evidence nor explained how the VA's view of plaintiff's proposal would have changed had the VA not used competitive range procedures.  Simply stating that its proposal was a "highly-rated, lowest-overall-priced proposal," is insufficient.  ECF No. 55 at 61; see also Wis. Physicians, 151 Fed. Cl. at 43.  There was no guaranteed number of awards in this

procurement, and the solicitation contemplated only seven awards.  See ECF No. 21-2 at 431.  Plaintiff's proposal was effectively the tenth highest rated proposal.  See ECF No. 55 at 57-58 (stating that plaintiff's proposal was the "highest rated [ ] not included in the competitive range"); ECF No. 21-19 at 729 (noting that there were nine offerors included in the competitive range).  The agency exercised its appropriate discretion to identify the offerors providing the best value for this solicitation.  Plaintiff does not explain, nor can the court discern, how not using the competitive range would have improved plaintiff's chances of securing the contract in this multi-award procurement.  ECF No. 55 at 58-61.

Further, to the extent that plaintiff's assertion that the VA "made awards in this procurement despite never having conducted any trade-offs among proposals" is an argument that had the VA made such trade-offs, plaintiff would have been more likely to secure the contract, such argument is unavailing.  Id. at 61 (emphasis in original).  The VA plainly considered all of the evaluation factors, as well as price, and determined that each offeror in the final competitive range merited an award.  See supra, Section B.1; ECF No. 21-19 at 771-72; see also id. at 729-30.  It appears to the court that plaintiff's argument is a further disagreement with the VA's conclusion.  The agency is granted wide latitude in determining which proposal represents the best value for the government.  See E.W. Bliss, 77 F.3d at 449.  And, as the court is not empowered to substitute its judgment for that of the agency, it declines to do so here.  Bowman, 419 U.S. at 285.

Regardless of whether the VA's use of a competitive range was inappropriate, plaintiff has failed to establish prejudice sufficient to confer standing and thus, its claim on this point must fail.  Alfa Laval, 175 F.3d at 1367 (quoting Statistica, 102 F.3d at 1582).

### 3.   Plaintiff Was Not Prejudiced by the VA's Addressing a Potential Organizational Conflict of Interest

Plaintiff argues that the VA failed to consider the "impact of [Booz Allen Hamilton's (BAH)] significant potential for an OCI in connection with this procurement," ECF No. 55 at 62, and the procurement is "tainted" by this "unmitigated OCI," id. at 61.  According to plaintiff, BAH was a "Major Subcontractor" for two offerors included in the competitive range as well as the incumbent contractor along with Cerner for the VA's EHRM contract.  Id. at 36-37 (citing ECF No. 21-5 at 296-97; ECF No. 21-3 at 30; ECF No. 21-7 at 27; ECF No. 21-20 at 490-539).  This, plaintiff contends, gives rise to "significant potential for all three basic categories of OCIs."  Id. at 63.  Specifically, plaintiff argues that BAH's EHRM contract results in a biased ground rules OCI because "[i]t is likely that BAH had a significant role in the development of the instant [s]olicitation requirements—particularly with respect to Sample Task 1 and the rubric against which the VA evaluated it."  Id.  In support of its claim, plaintiff notes that both offerors that proposed BAH as a major subcontractor received outstanding ratings on their Sample Task 1 proposals.  See id. at 64.  Further, plaintiff contends that impaired

objectivity and unequal access to information OCIs also result from BAH's involvement because "BAH's significant oversight role" will result in BAH evaluating its own subcontractor work, and BAH had "access to non-public, proprietary and source selection information in connection with this procurement," which gave the offerors proposing BAH as a subcontractor an unfair competitive advantage.  Id.

Plaintiff argues that these OCI allegations "implicate the composition of the competitive range," ECF No. 77 at 20, and "directly impacted the VA's evaluation of proposals in connection with the competitive range determination," id. at 21 (emphasis in original).  Plaintiff thus contends that the error "was a key evaluation error that directly impacted the composition of the competitive range and prejudiced" plaintiff.  Id.

Defendant responds that plaintiff does not having standing to bring this claim and it "failed to allege 'hard facts' establishing either an actual or apparent OCI."  ECF No. 61 at 74; see also ECF No. 76 at 13.  According to defendant, plaintiff's allegations are "pure speculation" and "demonstrably wrong."  ECF No. 61 at 74.  Defendant argues that any potential OCIs related to BAH did not require evaluation during the solicitation at issue here, rather they "would need to be evaluated at the time of the competition for [ ] task orders."  Id. at 75.  And, even so, the contracting officer "evaluated the potential for [OCIs] during the procurement" when he "considered whether contractors or subcontractors who have supported the VA's EHRM efforts would have an [OCI] with respect to Sample Task 1."  Id.  Defendant argues that the contracting officer's conclusion that his OCI determination "extends to other contractors that may have indirectly supported EHRM efforts," "obviously includes BAH" because "[a]ny information that a support contractor such as BAH possessed would have stemmed from the Cerner EHRM contract."  Id. at 76; see also ECF No. 69 at 40 (citing ECF No. 21-20 at 61 (presentation slide noting that BAH "provides critical program management, administrative, and technical support to []EHRM to support the deployment of Cerner while focusing on maximizing clinical value and enabling continuous improvements in patient safety, quality of care, patient and family engagement, and operational efficiency throughout VA").  Defendant thus contends that the court should defer to the contracting officer's "'considerable discretion'" in identifying conflicts.  ECF No. 61 at 76.

Defendant further contends that plaintiff cannot demonstrate that it had a substantial chance of receiving an award "because of the nature of the solicitation."  ECF No. 76 at 13.  According to defendant, the multiple possible awards, and the fact that the agency ultimately awarded more contracts than it originally planned, means that "even if the agency erred in making its awards to the offerors involved . . . it would have been 'illogical' to expect the agency to reverse course with respect to its concerns about [plaintiff]."  Id. at 14.  Defendant thus argues that plaintiff lacks standing to bring its OCI claims.

In the court's view, the VA's evaluation of the potential OCI—even if improper—did not affect the VA's evaluation of plaintiff's proposal. Plaintiff has pointed to no record evidence and has not explained how the VA's view of plaintiff's proposal would have changed had the VA evaluated the OCI differently. Simply stating that its proposal was a "highly-rated, lowest-overall-priced proposal," is insufficient. ECF No. 55 at 61; see also Wis. Physicians, 151 Fed. Cl. at 43. "Unless there is a 'connection between the government's [alleged] error and [the protestor's] failure to secure the contract . . . , there is no injury to redress, and no standing to sue.'" Wis. Physicians, 151 Fed. Cl. at 44 (quoting Labatt Food Serv., 577 F.3d at 1381) (alterations in original). Plaintiff does not explain, nor can the court discern, how a different evaluation of the alleged OCI would have improved plaintiff's chances of securing the contract in this multi-award procurement where plaintiff's proposal had already been properly evaluated by the agency and found not to merit further consideration. Therefore, plaintiff cannot establish prejudice sufficient to confer standing, and its claim on this point must fail. See id. at 44-45.

IV.     Conclusion

Accordingly, for the foregoing reasons:

(1)     Plaintiff's motion for judgment on the AR, ECF No. 55, is **DENIED**;

(2)     Defendant's and intervenor-defendants' cross-motions for judgment on the AR, ECF No. 57, ECF No. 59, and ECF No. 61, are **GRANTED**;

(3)     The clerk's office is directed to **ENTER** final judgment in defendant's and intervenor-defendants' favor **DISMISSING** plaintiff's complaint with prejudice; and

(4)     On or before **March 21, 2022**, the parties are directed to **CONFER** and **FILE** a **notice** attaching the parties' agreed upon redacted version of this opinion, with all competition-sensitive information blacked out.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge